UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LUKE BOWMAN et al.**                                                 **CIVIL ACTION**

**v.**                                           **NO. 21-1071**

**R. L. YOUNG, INC., et al.**                                   **SECTION D**

**ORDER & REASONS**

Before the Court is a motion to dismiss for failure to state a claim under Rule 12(b)(6) filed by counterclaim defendants Luke Bowman and Undisputed Consulting, LLC.[1] Counterclaimant R. L. Young, LLC opposes,[2] and Bowman and Undisputed Consulting filed a reply brief in support of their motion.[3] For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

I.      Factual and Procedural Background

This action was initiated by Luke Bowman and A & H Solutions, Inc. ("Bowman") in the Civil District Court for Orleans Parish.[4] Bowman brought this action "to seek payment of unpaid wages, penalty wages, and attorneys' fees," among other damages, claiming that the defendant, R. L. Young, LLC (d/b/a Young & Associates, or "YA"), had failed to pay him his due wages while he worked with them as an independent contractor in various roles in the operation of their business in

---

[1] R. Doc. 49.
[2] R. Doc. 52.
[3] R. Doc. 56.
[4] R. Doc. 1-2.

1

Louisiana.[5] YA engaged Bowman to provide repair estimating services for YA, and entered into an independent consulting agreement (the "ICA") as to certain terms.[6] At YA's request, Bowman moved to New Orleans to establish an office in the city for YA and to expand the company's operations throughout the southeast United States.[7] As a result of this additional work, Plaintiffs claim that YA and Mr. Bowman entered into three oral agreements that entitled Mr. Bowman to be distributed certain override profit payments from YA profits and that YA failed to distribute such payments.[8] After removing to this Court on the grounds of diversity jurisdiction,[9] YA filed a counter-claim, asserting that Bowman had breached his agreement with YA in numerous ways and was therefore responsible to YA for damages.[10] YA alleges that within a month of his termination from YA, Bowman formed Undisputed Consulting and knowingly and wrongfully interfered with YA by soliciting consultants to breach their agreements with YA during the period restricted under his ICA with YA. YA contends that Bowman violated the terms of his ICA by using confidential information to solicit and serve YA customers within six months of the termination of his relationship with YA. YA asserts six counts in its counterclaim, namely:

---

[5] *Id.*
[6] *See* R. Doc. 1-2, Petition ¶¶ 12, 17.
[7] *Id.* at ¶¶ 14-15.
[8] *Id.* at ¶¶ 27, 35-40.
[9] R. Doc. 1.
[10] R. Doc. 29.

1. Violation of the Louisiana Unfair Trade Practices Act;
2. Tortious Interferences with Business Expectancies (Consultant Agreements);
3. Tortious Interferences with Business Expectancies (Customer Contracts);
4. Tortious Interference with Contractual Relations under Missouri Law (Consultant Agreements);
5. Tortious Interference with Contractual Relations under Missouri Law (Customer Contracts); and
6. Breach of Contract.

In response, Bowman and Undisputed Consulting, LLC filed this Rule 12(b)(6) motion to dismiss.[11] Bowman argues that YA fails to meet the proper pleading standard, in part because it fails to include when he communicated with YA customers, consultants, or third parties, when he utilized YA's confidential information, and how these actions affected or harmed YA's business. Bowman also argues that YA improperly contends that Missouri law governs the present dispute.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[12] A motion

---

[11] R. Doc. 49.
[12] Fed. R. Civ. P. 12(b)(6).

to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[13] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[14] "Factual allegations must be enough to raise a right to relief above the speculative level."[15] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[16]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[17] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[18] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[19] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[20] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[21] That is, the complaint must offer more than an

---

[13] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).
[15] *Twombly*, 550 U.S. at 556.
[16] *Id.* at 570.
[17] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).
[18] *Iqbal*, 556 U.S. at 677–78.
[19] *Id.* at 679.
[20] *Id.* at 678.
[21] *Id.*

4

"unadorned, the defendant-unlawfully-harmed-me accusation."[22] There must be enough factual matter on the face of the complaint to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[23] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[24]

### III. Analysis

#### 1. Breach of Contract

Although breach of contract is the last claim asserted in YA's counterclaim, the Court follows the lead of the parties and addresses it first, as conclusions drawn from this analysis will inform the Court's decisions as to other counts. There are two elements of the breach of contract claim – a claim for breach of the non-solicitation provisions and a claim for breach of the confidentiality provisions. In order to determine of the viability of either claim the Court must examine which state law governs this contract.

##### I. Breach of the Non-Solicitation Clause

A federal court sitting in diversity applies the Louisiana approach to conflicts of law.[25] By its own terms, the ICA provides that it "shall be construed in accordance

---

[22] *Id.*
[23] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).
[24] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).
[25] *See Total Safety v. Rowland*, No. 13- 6109, 2014 WL 6485641, *14 (E.D. La. Nov. 18, 2014) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)).

with and governed for all purposes by the law of the State of Missouri."[26] While Louisiana law generally allows parties to a contract to stipulate which state's laws will govern, "[s]uch contractual stipulations are not honored . . . where 'there are legal or strong public policy considerations justifying the refusal to honor the contract as written.'"[27]

Louisiana has a strong public policy disfavoring agreements that restrict business, such as non-compete and non-solicitation clauses.[28] "Louisiana's strong public policy restricting noncompetition agreements between employers and employees is based on the underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently become a public burden."[29] Louisiana Revised Statute 23:921 allows for non-compete and non-solicitation clauses in limited exceptions. Pursuant to La. R.S. 23:921(C), non-compete and non-solicitation of-customers provisions in employment and independent contractor agreements are allowable if, and only if, they designate "a specified parish or parishes, or municipality, or parts thereof so long as the employer carries on a like business therein, not to exceed a period of two years . . . from the date of the last work performed under the contract." "Non-competition, non-solicitation, and non-recruitment covenants are subject to the foregoing requirements

---

[26] R. Doc. 29-1 at 8.
[27] *Total Safety*, 2014 WL 6485641, at *14. (quoting *NHC Corp. v. Broyles*, 749 F.2d 247, 251 (5th Cir. 1985)).
[28] La. R.S. 23:921.
[29] *Total Safety*, 2014 WL 6485641, at *15.-

as all three constitute non-compete provisions."[30] The Fifth Circuit has held that "contractual stipulations [regarding choice of law] are not honored, however, where 'there are legal or strong public policy considerations justifying the refusal to honor the contract as written.'"[31] In *Total Safety*, for example, the court enforced the contract at issue's non-compete clause because it specified the parishes and municipalities in which the covenants applied.[32]

Courts in Louisiana are split regarding whether non-solicitation clauses are enforceable in contracts with independent contractors.[33] In *Reynolds v. Paulson*, the court determined that plaintiff's status as an independent contractor under a consulting agreement rendered La. R.S. 23:921(A)(2) inapplicable. However, in *O'Hara v. Globus Medical, Inc.*, the court held that La. R.S. § 23:921(A)(2) applies to independent contractors. As this District has previously noted, "Louisiana's strong public policy against noncompete covenants stems from 'the disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away this liberty to earn his livelihood except by continuing in the employment of his

---

[30] *Id.*
[31] *See NCH Corp. v. Broyles*, 749 F.2d 247 at 250-51 (5th Cir. 1985).
[32] *See* 2014 WL 6485641, at *15.
[33] *Compare Reynolds v. Paulson*, 871 So.2d 1215, 1222 (La. Ct. App. 4th Cir. 2004) (Plaintiff's status as an independent contractor under a consulting agreement rendered 23:921(A)(2) inapplicable); and *Goodly v. Check-6, Inc.*, No. 16-1936, 2016 WL 3090293, *4 (E.D. La. June 2, 2016) (Plaintiff failed to introduce sufficient evidence to establish that the contract at issue was an employment contract, rather than an independent contractor agreement, rendering § 23:921 inapplicable); *with O'Hara v. Globus Medical, Inc.*, 181 So.3d 69, 84-85 (La. Ct. App. 1st Cir. 2015) (holding that § 23:921(A)(2) applies to independent contractors).

present employer.'"[34] That same logic readily extends to this case – Bowman, though an independent contractor and not an employee, experienced the same disparity of bargaining power as the employee in *O'Hara*. In contrast, the parties in *Reynolds* were sophisticated entities with a history of doing business together when they entered into agreements. Further, the court in *O'Hara* – which, notably, released its opinion some 11 years after the opinion in *Reynolds* – conducted a detailed statutory analysis of La. R.S. 23:921(C), which authorizes independent contractors to enter into non-solicitation agreements in the same manner as employees of a company.[35] Accordingly, the court determined that the same provisions of La. R.S. 23:921 that apply to employees, including the general policy against non-solicitation clauses and the strict geographic and time limits necessary to qualify as an acceptable non-solicitation clause, apply to independent contractors as if they were employees.

The Court therefore finds that the non-solicitation clause contained in the ICA must comply with the terms of La. R.S. 23:921 to be enforceable. In relevant part, the non-solicitation clause of the contract reads: "for six (6) months after termination or expiration of [the ICA], [Bowman] shall not … provide Directly or Indirectly the Services being performed under this Agreement … to any Insurance Company or third-party adjuster [to] whom [Bowman] has … (a) provided any Services on behalf

---

[34] *Medx, Inc. v. Ranger*, 780 F. Supp. 398, 401 (E.D. La. 1991) (quoting *Fine v. Property Damage Appraisers, Inc.*, 393 F. Supp. 1304, 1310 (E.D. La. 1975)).
[35] *See O'Hara*, 181 So. 3d at 85. One Louisiana court has even gone so far as to hold that pursuant to La. R.S. 23:921, "[i]ndependent contractors cannot be refrained from soliciting customers." *See Iberia Fin. Servs., LLC v. Mitchell*, 2019-413 (La. App. 3 Cir. 6/17/20), 299 So. 3d 195, 201, writ denied, 2020-00822 (La. 11/24/20), 305 So. 3d 101.

of YA, or (b) who was referred to [Bowman] by YA."[36] While the non-solicitation clause only limits Bowman from engaging in business for the first six months following his departure from YA (a time period well within the two years specified by statute), it fails to designate a parish or municipality where Bowman is not allowed to solicit business. A non-solicitation clause is not enforceable under La. R.S. 23:921(C) when it fails to designate a limited area in which it is enforceable.[37] Such is the case here. The non-solicitation clause contained in the Bowman ICA is not enforceable as it is contrary to strong Louisiana public policy and fails to satisfy the statutory language. YA cannot maintain a breach of contract claim for breach of the non-solicitation clause.[38]

## II. Breach of the Confidentiality Clause

Bowman does not assert that the confidentiality clause of the ICA is invalid under either Missouri or Louisiana law. In relevant part, the confidentiality clause binds Bowman such that he may not "divulge ... or use any ... Confidential Information in any manner for his own benefit or the benefit of any third party."[39]

---

[36] R. Doc. 29-1 at 6.
[37] *Total Safety*, 2014 WL 6485641, at *15; *see also Vartech Systems, Inc. v. Hayden,* 2005–2499 (La.App. 1st Cir. 12/20/06), 951 So.2d 247, 258 (stating that a noncompetition agreement must specifically name the parishes or municipalities in which the agreement is to have effect and that what is important is that the geographic limitation be express and clearly discernable).
[38] The Court recognizes that Missouri has a strong public policy in favor of non-solicitation clauses. *See Renal Treatment Ctrs-Missouri v. Braxton*, 945 S.W.2d 557, 563 (Mo. Ct. App. E.D. 1997) ("Non compete agreements emanate from the purpose of protecting a business entity from unfair competition by a former business associate without imposing unreasonable restraints on the latter"), *see also Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. E.D. 1997) (discussing Missouri public policy of protecting a company's "proprietary right in its stock of customers and their good will"). Missouri's interest, however, is not sufficient to overcome Louisiana's (as will be discussed again below), especially given the residency of the parties and the Court's prior determination on venue. *See* R. Doc. 61.
[39] R. Doc. 29-1 at 4.

Bowman asserts that "YA has failed to plead sufficient factual content to show that Bowman could be liable for breach of contract based on the use of YA's confidential information" because "YA does not allege <u>facts</u> evidencing how, where, when, or with whom he may have used YA's confidential information."[40] The Court disagrees. While YA has not identified the specific confidential information that Bowman may have used, it need not do so at this stage. As YA correctly notes in opposition to this motion, YA "has specifically alleged that Bowman has improperly utilized his knowledge of YA's business and customer base to solicit YA's other consultants and customers."[41]

Bowman likewise claims that "courts have held that parties alleging breach or improper utilization of confidential information or trade secrets must identify the same *prior to discovery*,"[42] but can identify no case in which this holding (given in *Kalencom Corp.* in response to a motion to compel) was applied to grant a motion to dismiss. The pleading standard requires enough factual matter to raise a "reasonable expectation" that discovery will reveal evidence as to each element of the asserted claims.[43] The Court is satisfied that YA's counterclaim meets that minimal standard.[44] Therefore this element of the breach of contract claim will not be dismissed.

---

[40] R. Doc. 49-1 at 8 (emphasis in original).
[41] R. Doc. 29 at 4-5.
[42] R. Doc. 56 at 6 (emphasis in original) (citing *Kalencom Corp. v. Shulman*, No. CV 17-5453, 2018 WL 1806037 (E.D. La. Apr. 17, 2018)).
[43] *Twombly*, 550 U.S. at 548.
[44] *See Traffic Jam Events, LLC v. Lilley*, No. 21-122, 2021 U.S. Dist. LEXIS 63893, at *11-12 (E.D. La. Apr. 1, 2021).

## 2. Violation of the Louisiana Unfair Trade Practices Act

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[45] "In general, acts which comprise unfair trade practices involve fraud, deception, misrepresentation, breach of fiduciary duty, or other unethical conduct. To succeed on a LUTPA claim, the plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. The span of prohibited practices under LUTPA is extremely narrow."[46] As the Fifth Circuit has recognized, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions."[47] Courts in this district have noted, however, that "[a]n employer may recover under LUTPA when 'a former employee breaches his duty not to use his former employer's confidential information.'"[48] To the extent that YA is able to demonstrate that Bowman improperly utilized confidential information after termination of his relationship with YA, YA may have an actionable claim under the LUTPA. This claim is not ripe for dismissal at this stage.[49]

---

[45] La. R.S. 51:1405(A).
[46] *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 51,758 (La.App. 2 Cir. 11/29/17) 245 So. 3d 1088, 1095 (citations omitted).
[47] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994) (citation omitted).
[48] *Ruby Slipper Café v. Belou*, 2019 U.S. Dist. LEXIS 44728, *19-20 (E.D. La. March 19, 2019) (quoting *Checkpoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 795 (E.D. La. 2012)).
[49] The Court recognizes, as Bowman notes, that use of "experience and skills acquired in … former employment is not fraud or an unfair trade practice." *Action Revenue Recovery, L.L.C. v. eBusiness Grp., L.L.C.*, 44,607 (La. App. 2 Cir. 8/19/09), 17 So.3d 999, 1006. To the extent that YA attempts to advance its claim on those bases, they will not recover. However, YA's LUTPA claim is based on use of confidential information rather than experience or skills.

### 3. Tort Claims

YA asserts two tort claims – tortious interferences with business expectancies and tortious interferences with contractual relations. Prior to a determination on the viability of either, the Court must again establish which state's law applies to these claims. Louisiana Civil Code Article 3542 provides the general rules for choice of law in tort claims. In relevant part, it provides:

> [Tort claims shall be] governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.[50]

The policies referred to in Article 3515 include "the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."[51] Bowman contends that Louisiana law ought to apply to both claims, while YA asserts that Missouri law ought to apply.

Though both Louisiana and Missouri have some connection to the parties and events giving rise to this dispute, Louisiana has the far stronger connections on this front. Though YA is a Nevada corporation, its principal place of business is alleged to

---

[50] La. Civ. Code 3542.
[51] La. Civ. Code 3515.

12

be in Missouri. Neither state has a strong claim to be the state in which the relationship between the parties was centered – most of the pertinent individuals on YA's side live in Washington and Tennessee[52] and the ICA, when signed, provided that notice would be given to YA under a Nevada address and Bowman under a Tennessee address.[53] But Bowman moved to Louisiana to perform work on YA's behalf,[54] and the actions which are the subject of this counterclaim took place in Louisiana. The facts as set forth in the Complaint confirm that YA availed itself of the opportunity to conduct business in New Orleans, by conducting business and leadership meetings in New Orleans.[55] The Court disagrees with YA's contention that "Louisiana's only connection to this dispute is Bowman's unilateral decision to move to Louisiana during his consulting relationship with YA," finding that statement to be unsupported by the record.[56] Additionally, Bowman's new company, through which he is alleged to have breached his contract and tortiously interfered with business expectancies and contractual relations, operates in New Orleans. Louisiana has the more pertinent contacts as to the tort claims asserted.

And while the parties would be justified to assume that Missouri law could apply, given the choice of law clause in the contract that governed their relationship and the jurisdictional waiver in the ICA that provided that Missouri courts could hear

---

[52] *See* R. Doc. 61 at 9.
[53] R. Doc. 29-1 at 7.
[54] As Bowman notes, he moved to Louisiana to establish a YA location in New Orleans well before the effective date of the ICA. R. Doc. 56 at 1-2.
[55] R. Doc. 1-2.
[56] R. Doc. 52.

disputes between the parties, the parties would also be justified to assume that any tort claims would be heard in the state in which the allegedly tortious conduct took place – namely, Louisiana. That factor does not weigh heavily in favor of either state. Because the more pertinent contacts, especially those which give rise to the tort claims, are in Louisiana, the Court applies Louisiana law to the claims.

### I. *Tortious Interferences with Business Expectancies*

To succeed on a claim for tortious interferences with business expectancies under Louisiana law, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) acted with actual malice; (2) actually prevented the plaintiff from dealing with a third party; (3) acted improperly, i.e., not to protect legitimate interests; and (4) caused damage to the plaintiff."[57] Bowman appears to argue that YA has failed to plead at least the first three of those requirements, but focuses his arguments in the motion on what he contends is a lack of malice in the counterclaim. "Malice is an essential element of a claim and actual malice must be plead in the complaint."[58] "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings."[59] That something is difficult to prove does not necessarily make it difficult to allege, however.

---

[57] *IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018).
[58] *Dorsey v. N. Life Ins. Co.*, 2005 U.S. Dist. LEXIS 17742, *57 (E.D. La. Aug. 12, 2005) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981)).
[59] *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La.App. 4 Cir. 03/06/02), 812 So. 2d 834, 841.

At the pleading stage, YA must only allege that Bowman acted in spite or ill will and that, in so acting, he "actually prevented the plaintiff from dealing with a third party."[60] YA has done so. As YA notes, their counterclaim asserts that "Bowman … acted with improper motive and with intent to harm YA,"[61] asserts that Bowman improperly used confidential information, and states that he caused named consultants and customers to breach their contractual agreements with YA.[62] This is sufficient to survive a motion to dismiss.

## II. Tortious Interference with Contractual Relations

YA agrees that Louisiana case law precludes a viable claim for tortious interference with contractual relations under Louisiana law.[63] This claim must therefore fall.

---

[60] *Bogues v. La. Energy Consultants, Inc.*, 46,434 (La.App. 2 Cir. 08/10/11), 71 So. 3d 1128, 1135.
[61] R. Doc. 29 at 8.
[62] *Id.* at 5-6.
[63] *See 9 to 5 Fashions v. Spurney*, 538 So. 2d 228 (La. 1989).

### IV. Conclusion

Accordingly, **IT IS ORDERED**:

That the motion to dismiss is **GRANTED WITH PREJUDICE**[64] as to the claims for breach of the non-solicitation clause and tortious interference with contractual relations and **DENIED** as to all other claims.

New Orleans, Louisiana, July 27, 2022.

                                          */s/ Wendy B. Vitter*
                                          **WENDY B. VITTER**
                                         **UNITED STATES DISTRICT JUDGE**

---

[64] The Court has considered whether an amendment could cure the defects outlined here. Pursuant to Fed. R. Civ. P. 15, the Court will "feely give leave [[to amend] when justice so requires." In considering doing so, the Court considered such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment" and concluded that any amendment would be futile as to both dismissed claims as the deficiencies are of law rather than fact, and thus unable to be cured by an amended pleading.