## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE BOWMAN et al.** | **CIVIL ACTION** |
| **v.** | **NO. 21-1071** |
| **R. L. YOUNG, INC., et al.** | **SECTION D** |

## <u>ORDER & REASONS</u>

Before the Court is a motion for summary judgment filed by counterclaim defendants Luke Bowman and Undisputed Consulting, LLC.[1] Counterclaimant R. L Young, LLC[2] ("YA") opposes the motion,[3] and Bowman and Undisputed Consulting, LLC have filed a reply.[4] Since the filing of the motion, the Court has granted Bowman's earlier motion to dismiss as to two of the claims for which summary judgment is sought, namely breach of contract for breach of the non-compete agreement, and tortious interference with contractual relations.[5] This motion is therefore moot as to those two claims. For the reasons that follow, the motion is **GRANTED** as to all other claims asserted by YA against Bowman and Undisputed, LLC.

---

[1] R. Doc. 110.
[2] R. L. Young, LLC is the successor-in-interest to R. L Young, Inc. and was substituted as the Defendant in this matter in place of R. L Young, Inc. d/b/a Young & Associates. *See* R. Doc. 30.
[3] R. Doc. 127-2. Also, *see* R. Doc. 146, duplicate Opposition following the Court's grant of leave to file in Excess of Page Limit. For ease of reference, the Court references the Opposition in R. Doc. 127-2.
[4] R. Doc. 139
[5] R. Doc. 163.

## I.     Factual and Procedural Background

This action was initiated by Luke Bowman and A & H Solutions, Inc. in the Civil District Court for Orleans Parish.[6] Bowman brought this action "to seek payment of unpaid wages, penalty wages, and attorneys' fees," among other damages, claiming that the defendant, R. L. Young, LLC (successor to R. L. Young, Inc. d/b/a Young & Associates, or "YA"), had failed to pay him his due wages while he worked with them as an independent contractor in various roles in the operation of their business in Louisiana.[7] YA engaged Bowman to provide repair estimating services for YA, and entered into an independent consulting agreement (the "ICA") as to certain terms.[8] At YA's request, Bowman moved to New Orleans to establish an office in the city for YA and to expand the company's operations throughout the southeast United States.[9] Plaintiffs claim that YA and Bowman entered into three oral agreements related to this additional work that entitled Bowman to be distributed certain override profit payments from YA profits. They further claim that YA failed to distribute such payments.[10]

After removing to this Court on the grounds of diversity jurisdiction,[11] YA filed a counter-claim, asserting that Bowman had breached his agreement with YA in numerous ways and was therefore responsible to YA for damages.[12] YA alleges that within a month of his termination from YA, Bowman formed Undisputed Consulting

---

[6] R. Doc. 1-2.
[7] *Id.*
[8] *See* R. Doc. 1-2, Petition ¶¶ 12, 17.
[9] *Id.* at ¶¶ 14-15.
[10] *Id.* at ¶¶ 27, 35-40.
[11] R. Doc. 1.
[12] R. Doc. 29.

and knowingly and wrongfully interfered with YA by soliciting consultants to breach their agreements with YA during the period restricted under his ICA with YA. YA contends that Bowman violated the terms of his ICA by using confidential information to solicit and serve YA customers within six months of the termination of his relationship with YA. YA asserts six counts in its counterclaim, namely:

1. Violation of the Louisiana Unfair Trade Practices Act;

2. Tortious Interferences with Business Expectancies (Consultant Agreements);

3. Tortious Interferences with Business Expectancies (Customer Contracts);

4. Tortious Interference with Contractual Relations under Missouri Law (Consultant Agreements);

5. Tortious Interference with Contractual Relations under Missouri Law (Customer Contracts); and

6. Breach of Contract.

In response, Bowman filed a Rule 12(b)(6) motion to dismiss.[13] Holding that Louisiana law applied to bar the non-compete in the ICA, the Court dismissed the breach of contract claim as to breach of the non-compete clause.[14] The Court likewise held that Louisiana law applied as to the tort claims asserted, and therefore dismissed the tortious interference with contractual relations claim as no such claim

---

[13] R. Doc. 49.
[14] R. Doc. 163.

sounds in Louisiana law.[15] The motion for summary judgment is therefore moot as to those claims. The Court now reviews the remaining three claims.

## II.    Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the record reveals no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.[16]   No genuine dispute of fact exists where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.[17] A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18]

The Supreme Court has emphasized that the mere assertion of a factual dispute does not defeat an otherwise properly supported motion.[19] Therefore, where contradictory "evidence is merely colorable, or is not significantly probative," summary judgment remains appropriate.[20]   Likewise, summary judgment is appropriate where the party opposing the motion fails to establish an essential element of its case.[21] In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party.[22] Instead, it must come forward with

---

[15] *Id.*

[16] FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[17] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[19] *See id.*

[20] *Id.* at 249–50 (citation omitted).

[21] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[22] *See Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

competent evidence, such as affidavits or depositions, to buttress its competing claim.[23] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence.[24] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[25] Finally, in evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the nonmoving party.[26]

### III.    Analysis

### A.    Breach of the ICA Non-Solicitation Clause

The Court dismissed this count in response to a motion to dismiss, holding that the non-compete clause was invalid as against the public policy of the state of Louisiana.[27] Accordingly, this claim is now moot.

### B.    Breach of the ICA Confidential Information Clause

The ICA states in relevant part that Bowman "agrees not to, Directly or Indirectly, divulge any of the Confidential Information or to use any of the Confidential Information in any manner for his own benefit or the benefit of any third party."[28] Bowman asserts that YA has no direct evidence that he either divulged or used the confidential information and that this claim must therefore fall. In response,

---

[23] *Id.*
[24] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam).
[25] *Delta & Pine Land Co.*, 530 F.3d at 398-99 (citations omitted).
[26] *Anderson*, 477 U.S. at 255.
[27] *See* R. Doc. 163 at 5-9.
[28] R. Doc. 1-2 at 24.

YA states that use can be inferred either from "long-continued possession" or circumstantial evidence.[29] YA also states that, at the very least, this is a matter for the jury to consider rather than the Court.

As the ICA prohibits Bowman from "divulging" or "using" any confidential information, determination of the motion for summary judgment hinges on whether there is a genuine issue of material fact whether Bowman either "divulged" or "used" such information. If there is no evidence to support that Bowman either divulged or used confidential information, summary judgment is appropriate. It is further worth noting, however, that the ICA prohibits Bowman from divulging or using confidential information whether "Directly or Indirectly." As defined elsewhere in the ICA, "the phrase 'Directly or Indirectly' includes, but is not limited to, acting either personally or as a[n] … independent contractor … or in any other capacity or by means of an entity or other device, or acting through Consultant's spouse … or any other relatives, friends, trustees, agents, or associates."[30] To succeed on summary judgment, then, Bowman must demonstrate that there is no material dispute as to whether he, or anyone else acting on his behalf, divulged or used any confidential information. The Court finds that he has met this burden. Under penalty of perjury, Bowman declares that while he retained copies of some of his work product,[31] he has "not used YA

---

[29] R. Doc. 127-2 at 22-23 (citations omitted). YA also off-handedly suggests that Bowman has breached by failing to immediately return all confidential information in his possession at the termination of the ICA. *See* [127] at 20. The Court notes, however, that the obligation in the ICA is that Bowman return all such information "upon request" by YA. YA has provided no evidence of any such request. R. Doc. 1-2 at 24.

[30] R. Doc. 1-2 at 27.

[31] Per the terms of the ICA, Bowman was required to "retain copies of all Work Product … for six (6) months after termination or expiration" of the ICA. R. Doc. 1-2 at 25.

information in my possession … for any purpose other than to service the losses that YA allowed me or others to continue handling after we joined Undisputed Consulting" and further specifically denies using any of YA's "information, documents, customer lists, or documents reflecting customer contact information to solicit any of YA's consultants . . . or to solicit business from any of YA's customers." [32]

In response, YA points to elements of Bowman's deposition in which he admits that he or his company possesses YA documents that are undeniably confidential. [33] YA asserts that 'use' can be satisfied by "**a long-continued possession** and employment of a thing for the purpose for which it is adapted." [34] Even that definition, however, states that possession alone is insufficient to constitute use – the conjunction 'and' mandates that a thing must be employed as well as possessed before something can be said to be in 'use.' YA does not directly contend that Bowman employed the documents, again relying on the possession of the documents.

Instead, YA asserts that "'use' can be inferred and proven by circumstantial evidence." [35] In support of their claim, YA cites a number of cases in which they say courts have held the same. In the first, the Fifth Circuit held that proof of use in trade secret cases "often depends upon circumstantial evidence." [36] There, the Fifth Circuit upheld a grant of summary judgment as "there is no evidence of actual use" and the

---

[32] R. Doc. 110-3 at 3.
[33] See, e.g., R. Doc. 127-5 at 16 (discussing documents containing a YA AR Aging Report and YA customers).
[34] R. Doc. 127-2 at 22 (quoting Black's Law Dictionary (11th ed. 2019)) (emphasis in record document).
[35] R. Doc. 127-2 at 22-23 (citations omitted).
[36] *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018) (quoting *Sw. Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581, 598 (Tex. App.—Tyler 2013) rev'd on other grounds, 491 S.W.3d 699 (Tex. 2016)).

circumstantial evidence presented was not compelling to the court.[37] Here, the circumstantial evidence YA presents is largely the success of Undisputed Consulting in the first six months of Bowman's time there: "Undisputed had zero customers and zero consultants before Bowman left YA to join Undisputed and within six months, contracted work with a dozen YA customers, poached twelve YA consultants, and generated over a million dollars in profits," all while possessing "YA's customer lists, consultant lists, financials, and a national marketing plan."[38] This statement connecting Bowman's subsequent and alleged successful work with Undisputed to his possession of confidential documents is pure speculation. In *GE Betz, Inc.*, the Fifth Circuit held: "With respect to the fact that AmSpec enjoyed success with clients whose information Moffitt-Johnston allegedly misappropriated, it would … be unreasonable to infer from such success that AmSpec and Moffitt-Johnston used GE's trade secrets."[39] Here, likewise, success is not evidence of use. While all reasonable inferences must be drawn in favor of the non-moving party, YA, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[40]

YA also cites a case from this district in which it says the court held that "a reasonable juror could infer" use of confidential information because the information "would have been useful."[41] In defining "use," that court relied on Texas trade secrets

---

[37] *GE Betz, Inc.*, 885 F.3d at 327, 326.
[38] R. Doc. 12-2 at 23.
[39] *Id.* at 326.
[40] *Delta & Pine Land Co.*, 530 F.3d at 398-99 (citations omitted), (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[41] *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2018 U.S. Dist. LEXIS 66250, *40, *43 (E.D. La. April 19, 2018).

law, which defines use as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant," including "soliciting customers through the use of information that is a trade secret."[42] However, the circumstantial evidence that court relied on to demonstrate use included an admission from a deponent "that documents in the … development filed were 'used to aid and assist in the development of [the system in question].'"[43] No such admission is present in this case. Indeed, "use" of the information in this case, as opposed to possession, is denied. Nor is there other circumstantial evidence that even nearly approaches the strength of the circumstantial evidence in *Wright's Well* – there, "employees … stated in depositions that they were not aware of the NDA" that was designed to restrict the use of the confidential information,[44] a corporate deponent "conceded that '[t]here are similarities'" between the operating procedure contained in the confidential information (which included handwritten notes) and the operating procedure the company subsequently developed,[45] and the newly developed system used an older pump rather than a newer one, at least arguably because of the usefulness of the confidential information for the older pump rather than the newer.[46] Again, here the circumstantial evidence presented by YA is Bowman and Undisputed's success with former YA clients, and no more. Were YA to provide evidence that there are otherwise difficult-to-explain similarities between

---

[42] *Id.* at *39 (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007)).
[43] *Id.* at *41.
[44] *Id.* at *42.
[45] *Id.* at *43.
[46] *Id.*

Undisputed's market plan and confidential information contained in YA documents, or some admission by Bowman that confidential information was utilized in soliciting customers for Undisputed, this would be a more difficult case. Such evidence has not been provided. Instead, YA acknowledges that "Bowman and Undisputed started soliciting YA consultants who previously worked with Bowman" at YA, thus recognizing that Bowman's previous relationships, rather than use of confidential information, could have formed the basis for Bowman and Undisputed's success.[47]

Alternatively, there is an implicit suggestion that Bowman divulged confidential information by uploading it to Undisputed servers. Bowman consistently maintained that he did not upload any confidential information to Undisputed servers and suggested that any such information was "probably obtained by another [former YA] consultant on their way out the door."[48] YA does not pursue this claim in its opposition. and the Court notes that YA concedes that another former YA consultant working for Undisputed, Mike Walker, stated that he uploaded documents and "'everything' without limitation" to the Undisputed server.[49] There is no record evidence to suggest that Bowman himself divulged confidential information to a third party, and Undisputed cannot be liable for breach of a contract it never signed and was not bound by. Additionally, there is no evidence that Bowman encouraged or

---

[47] R. Doc. 127-2 at 9.
[48] R. Doc. 127-5 at 17.
[49] R. Doc. 127-2 at 10.

otherwise caused, directly or indirectly, the confidential information to be uploaded to Undisputed's servers.[50]

## C.   Louisiana Unfair Trade Practices Act Claim

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[51] "The span of prohibited practices under LUTPA is extremely narrow."[52] As the Fifth Circuit has recognized, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions."[53] To recover under a LUTPA claim, the plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct."[54] Here, YA claims that Bowman's conduct with regard to YA's confidential information was unethical and unfair. As the Fifth Circuit has noted, "employees gain access to privileged information regarding the employer's particular business practices … [and] names of customers … . The employer is, therefore, especially vulnerable to duplicity at the hands of … employees. Courts zealously guard against allowing those in this special position of trust to profit from their wrongdoing."[55]

---

[50] While YA argues in its opposition brief that it does not need to prove actual damages to survive summary judgment on this claim, the Court does not find necessary to reach this argument in light of its findings above.

[51] La. R.S. 51:1405(A).

[52] *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 51,758 (La.App. 2 Cir. 11/29/17) 245 So. 3d 1088, 1095 (citations omitted).

[53] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994) (citation omitted).

[54] *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) quoting *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994)).

[55] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

As such, the LUTPA provides for a claim for misappropriation of information under the theory that such misappropriations are egregious and unfair breaches of the duty of loyalty or fiduciary duty. "Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices, which is defined in the LUTPA" as "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[56] To succeed on such a claim, a party must demonstrate three things: "(1) that [the company] possesses knowledge or information that is not generally known; (2) that it communicated the … information to the defendant under an  … agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, resulting in injury to the plaintiff."[57] There is no serious dispute as to the first and second prongs of the test have been met. YA possessed confidential information and communicated it to Bowman under the ICA, which limited his use and disclosure of the information.

As has been noted, there is no direct evidence that Bowman either used or disclosed any confidential information. Instead, YA asserts that "Bowman and Undisputed's use can be inferred by the fact that they possessed the highly relevant information that could be used to develop a competitor and they developed a competitor overnight."[58] In support of this theory of inference, YA cites *Ruby Slipper*

---

[56] *Restivo v. Hanger Prosthetics & Orthotics, Inc.,* 483 F. Supp. 2d 521 (E.D. La. April 11, 2007).
[57] *Ruby Slipper Café v. Belou*, 2019 U.S. Dist. LEXIS 44728, *20 (E.D. La. March 19, 2019).
[58] R. Doc. 127-2 at 26.

*Café v. Belou*, in which YA states that another court in this district "allowed the plaintiff's claim to survive summary judgment … with less evidence than present here."[59] The Court does not find this to be an accurate summary of the case. In *Ruby Slipper*, defendants did in fact argue that there was "no proof of disclosure or use," but there was additional evidence in the form of communications with a third party in which a defendant was alleged to have disclosed confidential information.[60] Here there are no allegations of particular conversations or communications in which confidential information was disclosed, there are no allegations that Bowman copied confidential YA models, and there are no allegations that Bowman used the confidential information for his own benefit. Instead, YA relies on speculation that Bowman and Undisputed's success must have been due to their possession and utilization of YA's confidential information. As noted within, speculation does not carry the burden here, and the Court will not infer *unfair* practice from economic success. As stated by the Fifth Circuit, "The [LUTPA] statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious."[61]

Again, to the extent that Undisputed itself used or disclosed confidential information, it cannot be liable for a LUTPA claim as there was no agreement

---

[59] *Id.*

[60] *See Belou*, 2019 U.S. Dist. LEXIS 44728 at *8 ("Ruby Slipper alleges that in the latter months of 2017, Belou and the Landlord had numerous telephone conversations and email communications in which Belou disclosed Ruby Slipper's trade secrets.").

[61] *Turner v. Purina Mills, Inc.* 989 F. 2d 1419 (5th  Cir. 1993).

"limiting [Undisputed's] use or disclosure of the information."[62] Additionally, while there are confidential documents on Undisputed's server, there is no record evidence that Bowman himself was the one who uploaded them and, instead, there is evidence to suggest that it was in fact other individuals who did so. Therefore the Court finds it appropriate to grant summary judgment as to the LUTPA claim.

## D.    Tortious Interference with Contractual Relations

The Court dismissed this count in response to a motion to dismiss, holding that Louisiana rather than Missouri law applies to this action and that no such tort sounds in Louisiana law.[63] Accordingly, this claim is now moot.

## E.    Tortious Interference with Business Relations

To succeed on a claim for tortious interferences with business expectancies under Louisiana law, "a plaintiff must prove by a preponderance of the evidence that the defendant: (1) acted with actual malice; (2) actually prevented the plaintiff from dealing with a third party; (3) acted improperly, i.e., not to protect legitimate interests; and (4) caused damage to the plaintiff."[64] This claim is "viewed … with disfavor" in Louisiana jurisprudence, to the extent that, as of early 2002, "there appear to be no reported cases in which anyone actually has been held liable for the tort."[65] "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in

---

[62] *Belou*, 2019 U.S. Dist. LEXIS 44728 at *20.

[63] *See* R. Doc. 163 at 15.

[64] *IberiaBank v. Broussard*, 907 F.3d 826, 841 (5th Cir. 2018) (citations and internal quotation marks omitted).

[65] *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4 Cir. 3/6/02), 812 So. 2d 834, 841 (citation omitted).

most commercial cases in which conduct is driven by the profit motive, not by bad feelings."[66]

As evidence that Bowman was acting out of malice rather than profit motive, YA suggests that his breaches of the ICA, his moving to a competitor, and his "direct hostility toward YA" suffice. To evince that "direct hostility," YA quotes Bowman as saying that he had felt "jerked around" by YA, that YA's business practices are "shady" and even "illegal," and that YA is not a "real outfit."[67] These quotes show frustration with, disdain for, and even arguably anger towards YA, but statements are not malicious actions, and nor are they, without more, equivalent to spite or ill will. As for the alleged breaches of the ICA and the moving to a competitor – these too do not demonstrate spite or ill will. It is perfectly reasonable, and a common occurrence, for an individual dissatisfied with a company to leave that company but remain within his or her industry, and the Court has already ruled that Bowman cannot be held liable for breaching the ICA.

YA's best argument for malice is that "half of Undisputed's consultants came from YA and over at least $1,000,000 in revenue came from YA clients." But even that falls well short of demonstrating a claim under LUTPA. "Profit maximization … has been held insufficient to satisfy the malice element."[68] All YA has demonstrated is that Bowman found success after leaving YA. This is woefully insufficient to defeat summary judgment in this case. Additionally, and pretermitting, for the moment,

---

[66] *Id.* (citations omitted).
[67] R. Doc. 127-2 at 34.
[68] *JCD Mktg. Co.*, 812 So. 2d at 841.

whether Bowman acted with malice, none of these actions, even if held to have been conducted with "actual malice," were "improper," another requirement of the statute. To succeed on a claim for tortious interferences with business expectancies under Louisiana law, a plaintiff must also prove by a preponderance of the evidence that the defendant acted improperly, "not to protect legitimate interests." Louisiana law protects the businessman from 'malicious and wanton interference,' though it permits interferences designed to protect legitimate interests of the actor."[69] "The plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff."[70] YA has failed to provide this Court with any evidence that Bowman improperly influenced others not to deal with YA.

## IV.    Conclusion

Accordingly, **IT IS ORDERED** that the motion for summary judgment (R. Doc. 110) is **GRANTED** as to all claims in R. L. Young, LLC's Counterclaim not already dismissed under the Court's order granting in part the prior motion to dismiss (R. Doc. 163).

New Orleans, Louisiana, July 29, 2022.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[69] *Bogues v. Louisiana Energy Consultants, Inc.* (La. App. 2 Cir. 8/10/11) 71 So. 3d 128.
[70] *Restivo,* 483 F. Supp. 2d at 537.