UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE BOWMAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1071** |
| **R.L. YOUNG, INC., ET AL.** | **SECTION: D (5)** |

## ORDER AND REASONS

Before the Court is R.L. Young, LLC's[1] ("Defendant") Motion *In Limine* to Exclude the Supplemental Damage Models of Plaintiff Luke Bowman.[2] Luke Bowman ("Plaintiff") opposes this motion and R.L. Young, LLC has filed a Reply.[3]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED**.

### I.     Factual and Procedural Background[4]

In preparation for trial, Plaintiff has personally prepared several different models for damages he allegedly suffered from Defendant's conduct. His first damage model, referred to as BOWMAN_1095–1097, was provided to Defendant on December 20, 2021.[5] During Plaintiff's deposition, counsel for Defendant asked Plaintiff to explain his calculations and his methods for constructing his model for damages, to which Plaintiff answered accordingly.[6] Thereafter, on April 9, 2022, after the course

---

[1] Defendant R. L. Young, LLC is the successor in interest to R. L. Young, Inc. and was substituted as the correctly named defendant. *See* R. Doc. 30.
[2] R. Doc. 148.
[3] R. Docs. 153 and 162, respectively.
[4] As the Factual and Procedural Background has been extensively detailed in prior orders, the Court limits its recitation to facts relevant to this Motion. *See, e.g.*, R. Docs. 61, 163, and 164.
[5] R. Doc. 148-1 at p. 3.
[6] *Id.*

of several months and discovery disputes, Defendant produced documents relevant to Plaintiff's calculation of damages.[7] To "confirm he understood" the content of these documents, Plaintiff deposed Defendant's former CFO, Eric Emme, on May 6, 2022 and took Defendant's corporate deposition on May 12, 2022.[8] Defendant produced additional financial records on May 9, 2022, the deadline for discovery.[9]

Nearly three weeks after the close of discovery, Plaintiff provided Defendant with new damage models, BOWMAN_1976 and BOWMAN_1977.[10] Plaintiff represents that these new damage models reflect the new information acquired during discovery that was unavailable to him for his original model for damages.[11]

In its Motion, Defendant raises a number of grounds for why the Court should exclude BOWMAN_1976 and BOWMAN_1977 and any accompanying testimony. First, Defendant argues that the damages models should be excluded because they are untimely.[12] As Defendant points out, and Plaintiff does not dispute, Plaintiff provided Defendant with the adjusted damage models on May 27, 2022, roughly three weeks after the May 9, 2022 close of discovery.[13] Further, Defendant argues that Plaintiff has not provided a sufficient showing of good cause to justify his untimely disclosure.[14]

---

[7] *Id.* at pp. 5–6. Plaintiff states that the documents were given to him on April 7, 2022. *See* R. Doc. 153 at p. 5.
[8] R. Doc. 153 at p. 5.
[9] *Id.*
[10] *Id.*; R. Doc. 148-1 at p. 4.
[11] R. Doc. 153 at p. 5.
[12] R. Doc. 148-1 at pp. 5–6.
[13] *Id.*; *see also* Amended Scheduling Order, R. Doc. 65.
[14] R. Doc. 148-1 at p. 6.

Second, Defendant argues that even if timely, the damage models should be excluded for failure to comply with Fed. R. Civ. P. 26.[15] Specifically, Defendant argues that because Plaintiff's damage models are in fact expert reports, Plaintiff was required to not only be disclosed as a damages expert but also to disclose the "how" and "why" of his conclusions.[16] Relatedly, Defendant contends that both BOWMAN_1976 and BOWMAN_1977 are replete with errors and incorrect calculations and are thus both unreliable.[17]

Third, Defendant argues that because Plaintiff's damage models qualify as expert reports under Fed. R. Civ. P. 26, and because Plaintiff himself is not an expert, any testimony about the damage models would be impermissible lay testimony under Fed. R. Evid. 701 and 702.[18] In effect, Defendant argues that Plaintiff needs an expert to produce the type of damages model he is seeking to introduce.

Finally, Defendant points out that regardless of whether the damage models are untimely or an improper expert report, they are hearsay and thus should be excluded on that ground.[19] Defendant asserts that the damage models are out-of-court statements being offered for the truth of the matter asserted—i.e., that Plaintiff was entitled to certain profits and is owed damages—and do not fall into a recognized exception to the rule against hearsay.[20] Because Defendant raised this hearsay

---

[15] *Id.* at pp. 6–11.
[16] *Id.* at p. 7.
[17] *Id.* at pp. 7–11.
[18] *Id.* at pp. 11–12.
[19] R. Doc. 162 at pp. 1, 5–6.
[20] *Id.* at pp. 5–6.

argument for the first time in their reply brief, the Court considers the argument to be waived.[21]

Plaintiff opposes the Motion and provides several counterarguments to Defendant's contentions. First, Plaintiff argues that BOWMAN_1976 and BOWMAN_1977 are not untimely because Plaintiff was merely supplementing his prior damage model that he turned over to Defendant in December of 2021, pursuant to Fed. R. Civ. P. 26(e).[22] Although Plaintiff admits that BOWMAN_1976 and BOWMAN_1977 were not provided to Defendant until several weeks past the discovery deadline, Plaintiff argues that the Scheduling Order "did not prohibit Bowman from acting under Fed. R. Civ. P. 26(e)(1) to seasonably supplement his prior discovery responses . . . ."[23] Further, Plaintiff disputes that Defendant has been prejudiced by the late disclosure given that Defendant "chose to depose Bowman before . . . Bowman had an opportunity to update his damage calculations," and that Defendant's Memorandum to this Motion "makes clear" that Defendant understands how Bowman computed his damages.[24]

As to Defendant's other arguments for exclusion of BOWMAN_1976 and BOWMAN_1977, Plaintiff contends that both documents contain accurate calculations and reliable methods, save for several admitted errors that Plaintiff now

---

[21] *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").
[22] R. Doc. 153 at p. 6.
[23] *Id.*
[24] *Id.*

seeks leave to correct.[25]  Further, Plaintiff argues that contrary to Defendant's insinuation that the damage models contain complicated and difficult calculations that only an expert witness could attest to, both BOWMAN_1976 and BOWMAN_1977 "reflect simple math calculations . . . and no scientific or technical expertise was used or required to create them."[26]  Thus, Plaintiff argues, the damage models are not expert reports, rendering null Defendant's arguments regarding timeliness of disclosure of expert reports under Fed. R. Civ. P. 26 and any argument as to improper testimony under Fed. R. Evid. 701 and 702 as well.

Because the Court finds Plaintiff's damage models, BOWMAN_1976 and BOWMAN_1977, to be untimely and without good cause for their untimeliness, the Court does not address the parties' various other arguments regarding the accuracy of the models and whether the models constitute expert reports.

## II. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent."[27]  According to the Fifth Circuit, "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[28]  In determining whether a party has met its burden of proving "good cause" under Rule 16(b)(4), this Court must consider four factors: (1) the party's

---

[25] *Id.* at p. 14 ("[Plaintiff] respectfully requests that the Court allow him to substitute Exhibits A and B to make the foregoing modifications and otherwise deny [Defendant]'s motion in limine to exclude his damage calculations.").
[26] *Id.* at p. 4.
[27] Fed. R. Civ. P. 16(b)(4).
[28] *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

explanation for failing to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice.[29]

Federal Rule of Civil Procedure 26(e) requires parties to supplement or correct their disclosures in a timely manner to account for incorrect or incomplete disclosures.[30] Specifically, Fed. R. Civ. P. 26(e)(1)(A) provides that a party must supplement "in a timely manner" when it "learns that in some material respect the disclosure is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[31]

### III. Analysis

#### A. Timeliness of Rule 26(e) Supplements

The Court begins by addressing Plaintiff's contention that the deadlines listed in the Scheduling Order have no bearing on the ability of a party to supplement or correct its prior disclosure or responses pursuant to Fed. R. Civ. P. 26(e)(1).[32] Plaintiff cites no support—neither caselaw, nor statute, nor Federal Rule—for this proposition. Indeed, the Court is not aware of any precedent suggesting that a party's duty to supplement their Fed. R. Civ. P. 26(a) disclosures somehow categorically

---

[29] *See, e.g., id.* at 536; *Williams v. BP Expl. & Prod., Inc.*, No. CV 18-9753, 2019 WL 6615504 (E.D. La. Dec. 5, 2019).
[30] Fed. R. Civ. P. 26(e).
[31] Fed. R. Civ. P. 26(e)(1)(A).
[32] *See* R. Doc. 153 at p. 6 ("[The Scheduling Order] did not prohibit [Plaintiff] from acting under Fed. R. Civ. P. 26(e)(1) to seasonably supplement his prior discovery responses when he determined based on the new documents [Defendant] produced that his prior damage calculations were not complete.").

trumps the deadlines set forth in the Court's Fed. R. Civ. P. 16 Scheduling Order.[33] Such a rule would allow a party to "supplement" a document on the eve of trial under the guise of following the strictures of Rule 26(e). Moreover, as the Fifth Circuit has noted, the very purpose of Fed. R. Civ. P. 26(e) is to prevent unfair surprise.[34] By allowing a backdoor end-around the deadlines set forth in the Scheduling Order, this Court would be undermining the very purpose Fed. R. Civ. P. 26(e) serves in the first place.

Additionally, the language of Fed. R. Civ. P. 26(e) cautions against Plaintiff's proffered interpretation. Rule 26(e)(1) states that a party "must supplement or correct its disclosure or response . . . *in a timely manner* . . . ."[35] While the phrase "in a timely manner" could be taken to solely mean simply that a party cannot delay in providing a supplement or correction once it becomes aware of new information, the Court finds that the better reading would be to also consider timeliness in the context of the relevant discovery deadlines.[36] Bolstering this reading is the nearby Fed. R. Civ. P. 26(e)(2) governing a party's duty to supplement expert reports. The language of that subsection reads that "[a]ny additions or changes . . . must be disclosed by the

---

[33] *See Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 375 (5th Cir. 2004) (suggesting that a party may move to exclude alleged supplementary material for failure to comply with a court's scheduling order); *cf. Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (upholding district court's exclusion of expert testimony where initial expert reports were mere outlines, although the reports were "supplemented" after the disclosure deadline).
[34] *See, e.g.*, *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994).
[35] Fed. R. Civ. P. 26(e)(1) (emphasis added).
[36] *Cf. Matter of Savage Inland Marine, LLC*, No. 1:19-CV-536, 2021 WL 2935306 (E.D. Tex. Jan. 13, 2021) ("Supplemental disclosures 'are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.'" (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016)).

time the party's pretrial disclosures under Rule 26(a)(3) are due."[37] It seems clear to the Court that the drafters of Rule 26 of the Federal Rules of Civil Procedure were concerned about the timeliness of supplemental disclosures and sought to discourage eleventh-hour changes and additions.[38] While it is true that Rule 26(e)(1) lacks the same explicit language regarding the exact timing for supplements as Rule 26(e)(2), the Court nevertheless holds that the phrase "in a timely manner" necessarily contemplates reference to the deadlines prescribed by the Scheduling Order. Again, the Court is concerned that an interpretation otherwise would render discovery deadlines a mere paper tiger.

**B. Good Cause to Amend Scheduling Order**

The foregoing does not mean, however, that a party may never supplement under Rule 26(e) once the deadline for discovery has come and gone. Just as Rule 26(e) does not swallow whole Rule 16, neither does Rule 16 nullify Rule 26(e). Rather, the two Rules must be read in harmony. A party seeking to supplement a prior discovery disclosure or response after the deadline for discovery has passed must demonstrate good cause under Fed. R. Civ. P 16(b)(4) and obtain the Court's permission to use the supplement as an exhibit at trial.[39] Although Plaintiff has neither sought leave or moved for this Court to amend its Scheduling Order to allow for him to introduce his supplemental damages models, the Court undertakes an

---

[37] Fed. R. Civ. P. 26(e)(2).
[38] *See Reed*, 16 F.3d at 85 (Our reading of [Rule 26(e)] is consistent with the Rule's basic purpose of preventing prejudice and surprise . . . .").
[39] *See* R. Doc. 65 ("The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown.").

analysis of whether Plaintiff provided good cause for his failure to provide his supplementary materials to Defendant within the boundaries set in the Scheduling Order.[40]

As previously mentioned, the Court looks to four separate factors to determine whether Plaintiff has adequately demonstrated good cause for his failure to comply with applicable discovery deadlines: (1) the Plaintiff's reason for the delay; (2) the importance of the supplement to Plaintiff; (3) the prejudice to Defendant in allowing the supplement to come in; (4) the availability of a continuance to alleviate the prejudice.[41]

**1. Plaintiff's Explanation for Failing to Meet the Discovery Deadline**

Plaintiff's explanation as to why he provided BOWMAN_1976 and BOWMAN_1977 to Defendant weeks after the end of the discovery deadline is twofold. First, as discussed above, Plaintiff argues that he was not required to follow the Scheduling Order with regards to Fed. R. Civ. P. 26(e) supplements.[42] For the reasons stated, *supra*, the Court finds this explanation to be deficient. Next, Plaintiff seems to contend that his delay in turning over his updated damage models was in turn caused by delays on the part of Defendant in handing over financial documents

---

[40] In his Opposition to this Motion, Plaintiff moves for the Court to allow him to further amend his damage models in light of errors in the models recently discovered by Plaintiff. *See* R. Doc. 153 at p. 14. Setting aside the procedural irregularity of seeking affirmative relief in an opposition brief, the Court construes Plaintiff's motion as essentially seeking leave from this Court to allow for the use of BOWMAN_1976 and BOWMAN_1977 at trial. Thus, the Court finds it appropriate to determine here whether Plaintiff has shown good cause for these untimely supplements.
[41] *See S&W Enterprises, LLC*, 315 F.3d at 536.
[42] R. Doc. 153 at p. 6.

critical for Plaintiff to use in his calculations.[43] Plaintiff also points out that Defendant provided additional financial records on the May 9, 2022 discovery deadline, yet does not contend that any of these documents were relevant to his damage models or that he relied upon them in any way.[44]

For their part, Defendant responds that much of the data that Plaintiff relied upon to create BOWMAN_1976 and BOWMAN_1977 had been available to Plaintiff for several years and that the most recent data that Plaintiff would have relied upon was disclosed to Plaintiff on April 9, 2022, about a month and a half before Plaintiff produced his supplementary damage models.[45] Further, Defendant argues that Bowman's deposition makes clear that he was able to calculate the figures for BOWMAN_1976 "before March 3, 2022," yet waited until May 27, 2022 to turn those calculations over to Defendant.[46]

Neither party disputes that by April 9, 2022, Plaintiff had received all relevant documents from Defendant needed to produce BOWMAN_1976 and BOWMAN_1977. Plaintiff, however, contends that he needed to depose Defendant's CFO, Eric Emme, to better understand the information provided within the April 9, 2022 disclosures.[47] Although the Court understands that this deposition did not take place until May 6, 2022, just days before the discovery deadline, the Court is not aware of what effect

---

[43] *See id.* at p. 5. The Court notes that Plaintiff does not explicitly state that this was the reason for his delay. However, the Court reads Plaintiff's discussion of the various deadlines as essentially arguing that he was unable to produce his new updated damage model until the end of May due to Defendant's delay.
[44] *See id.*
[45] R. Doc. 148-1 at pp. 5–6.
[46] R. Doc. 162 at pp. 6–8.
[47] R. Doc. 153 at p. 5.

that deposition had on the ultimate results of BOWMAN_1976 and BOWMAN_1977, if at all. Moreover, the Court is left guessing as to the timeline for the production of BOWMAN_1976 and BOWMAN_1977 and the reasons for why Plaintiff was unable to meet the discovery deadlines. Further, Plaintiff never sought leave to extend the discovery deadline. Given that Plaintiff had exactly a month from the time the relevant financial documents were turned over to the time discovery ended, the Court is unsure why Plaintiff could not have produced his supplemental models then. Plaintiff's boilerplate language and vague assertions are insufficient as explanations for the late disclosures.

The Court finds that the first factor weighs in favor of not finding good cause.

**2. The Importance of BOWMAN_1976 and BOWMAN_1977 to Plaintiff**

The Court next considers the importance of the requested relief. Plaintiff has provided no argument as to the importance of these damage models to his case. Similarly, Defendant has not addressed the matter either. Regardless, the Court considers this factor in determining its good cause analysis. Initially, the Court recognizes that both parties have spent considerable energy in arguing their respective positions on this matter, and with equal fervor. That said, it is clear from the briefing that the inclusion of the adjusted (or, if allowed, further adjusted) models are more important to Plaintiff as he seeks to support his damages sought in this matter. The Court notes that, even if excluded, Plaintiff will still be allowed to testify as to the damages he believes he is owed, and Plaintiff may be able to introduce as exhibits some of the underlying data which BOWMAN_1976 and BOWMAN_1977

are based upon. Even with this approach, the Court finds this factor to weigh in Plaintiff's favor, but only slightly.

### 3. The Prejudice to Defendant if the Court Allows Plaintiff to Use BOWMAN_1976 and BOWMAN_1977 at Trial

Next, the Court considers the potential prejudice to Defendant if the Court were to allow Plaintiff to introduce BOWMAN_1976 and BOWMAN_1977. Defendant's main argument as to prejudice is that the untimely disclosure of the supplementary damage models "deprives [Defendant] of the ability to retain a rebuttal expert to show just how unreliable [Plaintiff's] damage model truly is as well as depose [Plaintiff] on his methods and calculations . . . ."[48] Considered in light of Defendant's other argument that BOWMAN_1976 and BOWMAN_1977 are indeed expert reports, the thrust of Defendant's contention here is that Plaintiff would be allowed to present expert testimony without the Defendant being allowed to counter that testimony.

Conversely, Plaintiff responds that whatever prejudice Defendant might incur with the introduction of BOWMAN_1976 and BOWMAN_1977 is entirely self-induced.[49] Plaintiff contends that Defendant should have waited to depose Plaintiff until after Defendant had "fully responded to [Plaintiff]'s discovery requests and, thus, before [Plaintiff] had an opportunity to update his damage calculations."[50] Further, Plaintiff suggests that because Defendant's "memorandum [in support of their motion *in limine*] makes clear . . . [that] it does not need to depose Bowman to

---

[48] R. Doc. 148-1 at p. 6.
[49] R. Doc. 153 at p. 6.
[50] *Id.*

understand how he computed his damages[,]" Defendant's argument that it would need a rebuttal expert to counter Plaintiff's damage model is meritless.[51]

The Court agrees with Defendant about the prejudicial effect of allowing Plaintiff to introduce and testify with regards to BOWMAN_1976 and BOWMAN_1977. For one, given the relatively sophisticated[52] analysis and computations involved in Plaintiff's damage models, the Court understands Defendant's frustration regarding not having the ability to hire an expert to rebut Plaintiff's claims. Secondly, the Court finds Plaintiff's arguments regarding the supposed lack of prejudice to be unconvincing. It remains unclear to the Court how Defendant is to blame for not waiting until after Plaintiff had provided his supplementary damages report to depose Plaintiff when Plaintiff did not provide BOWMAN_1976 and BOWMAN_1977 until three weeks after the deadline for depositions had passed. Moreover, there is no evidence to suggest that Defendant was even aware that Plaintiff would be providing supplementary damage models. As to Plaintiff's contention that Defendant's Memorandum in support of the instant Motion belies their alleged lack of understanding of Plaintiff's models, the Court notes that whatever understanding counsel for Defendant may have regarding BOWMAN_1976 and BOWMAN_1977 is not equivalent to the understanding that a properly admitted expert would have. Further, unlike an expert witness, counsel is

---

[51] *Id.*

[52] The Court does not decide here whether BOWMAN_1976 and BOWMAN_1977 are indeed expert reports. The Court notes that while the calculations performed by Bowman are hardly the work of a Galois or Leibniz, the models are more involved than simple elementary arithmetic, as Plaintiff suggests. *See* R. Doc. 153 at p. 2 ("Only grade school math skills are required . . . .").

not permitted to point out and opine at trial regarding the alleged inaccuracies and errors in the models. The prejudice to Defendant in having BOWMAN_1976 and BOWMAN_1977 introduced at trial is not alleviated by the fact that counsel for Plaintiff regards counsel for Defendant as numerically and financially literate. Accordingly, the Court finds that this factor weighs against a finding of good cause.

### 4. The Availability of a Continuance to Cure the Prejudice

Finally, the Court considers whether a continuance would cure the potential prejudice to Defendant. Neither party has addressed this factor in their briefing. Further, neither party has asked for a continuance in this matter.[53] The Court is not inclined to issue a continuance in this case, nor would it appear that either of the parties would be so inclined as well. Importantly, trial in this matter is less than three weeks away. While such a continuance may alleviate whatever prejudice to Defendant may result, the Court as well as the parties would be seriously inconvenienced by a continuance with trial only weeks away. Further, if a continuance were granted, and as noted by Defendant, Defendant would seek to re-open discovery, thus incurring additional expenses in time and money for the parties. Thus, this factor is neutral or weighs slightly against finding good cause.

Considering the four factors, the Court finds that Plaintiff has not established good cause for his failure to abide by the Scheduling Order by producing

---

[53] In their Reply, Defendant asks for the Court to reopen discovery "for the limited purpose of deposing Bowman on his calculations, methods, assumptions, and conclusions and be allowed to designate a rebuttal expert to testify at trial to refute his calculations and methodologies[,]" should the Court find good cause for Plaintiff to use his damage models at trial. R. Doc. 162 at p. 9. However, this request of the Court is premised on a finding of good cause—the very thing that this Court is trying to determine. Thus, it does not appear that Defendant intended to address the fourth factor of the good cause analysis.

BOWMAN_1976 and BOWMAN_1977 to Defendant three weeks after the end of discovery. Accordingly, BOWMAN_1976 and BOWMAN_1977 are excluded from introduction at trial.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that R.L. Young's Motion *in Limine* to Exclude Plaintiff's Damage Models[54] is **GRANTED.**

New Orleans, Louisiana, September 1, 2022.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[54] R. Doc. 148.