UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE BOWMAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1071** |
| **R.L. YOUNG, INC., ET AL.** | **SECTION: D (5)** |

**ORDER AND REASONS**

Before the Court is R.L. Young, LLC's ("Defendant's") Motion *In Limine* to Exclude Certain Testimony and Evidence, which seeks to exclude testimony from Cameron Richartz, Ruben Mireles, Sef Haddad, Michael Stockwell, and Jerry Kesloff as well as exclude the use of a prior and since-amended interrogatory answer by Defendant.[1] Luke Bowman and A&H Solutions, Inc. (collectively "Plaintiffs") oppose this motion, asserting, *inter alia*, that the proposed testimony of the witnesses is both relevant and admissible non-character evidence and that Plaintiffs ought to be allowed to introduce the prior interrogatory for impeachment purposes.[2]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED** in part and **DENIED** in part.

### I. Testimony of Cameron Richartz, Ruben Mireles, Sef Haddad, Michael Stockwell, and Jerry Kesloff

Defendant argues that the testimonies of Cameron Richartz, Ruben Mireles, Sef Haddad, Michael Stockwell, and Jerry Kesloff—all individuals with prior work experience with Defendant—should be excluded either as irrelevant under Federal

---

[1] R. Doc. 150.
[2] R. Doc. 152.

Rule of Evidence 401 or, if relevant, as improper character evidence under Federal Rule of Evidence 404.[3] More specifically, Defendant argues that the testimony of these five individuals would be irrelevant to the case at bar because testimony about each witnesses' "own personal work history and experience" with Defendant and the "personal reasons" why each left work with Defendant have "no tendency to make [Plaintiff's] claims . . . more probable."[4] Further, Defendant argues that even if the testimony of the instant witnesses is both relevant and fits within an exception to the general rule against the admissibility of evidence of prior acts under Federal Rule of Evidence 404(b), this Court must still exclude the witnesses from testifying pursuant to Federal Rule of Evidence 403, given the danger of unfair prejudice that would result.[5]

In response, Plaintiffs argue that the testimony of these five individuals is directly relevant to Plaintiffs' claims because their testimony will demonstrate that they, like Plaintiffs, were promised but never paid increased profits, tending to show that Defendants did in fact make certain promises to Plaintiff.[6] Further, Plaintiffs argue that the proposed testimony does not run afoul of Fed. R. Evid. 404's general exclusion of character evidence in civil cases because they intend to use such evidence

---

[3] R. Doc. 150-1 at pp. 2, 6.
[4] *Id*. at p. 7.
[5] R. Doc. 150-1 at pp. 3–4. Defendants additionally raise the issue of habit evidence under Fed. R. Evid. 406. *See id*. at p. 5–6. Plaintiffs do not make any argument that such testimony would fall under the rubric of permissible habit evidence and thus the Court need not consider this argument. The Court, however, agrees with Defendant that such testimony would not suffice as permissible habit evidence given the relatively small number of discrete instances that the witnesses would testify about—hardly evidence of "an organization's routine practice." Fed. R. Evid. 406.
[6] R. Doc. 152 at p. 3.

for a permissible non-character purpose under Fed. R. Evid. 404(b)(2).[7] Specifically, Plaintiffs claim that "the proposed testimony of the Witnesses goes to [Defendant's] intent motive, and absence of mistake."[8]

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and if the fact it seeks to prove is of consequence in determining the action.[9] While all relevant evidence is admissible, the Court may exclude relevant evidence it its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[10] Although relevance is not a high bar,[11] Plaintiffs have provided little evidence to support even that basic showing. Plaintiffs principally argue that they have identified the witnesses in prior discovery documents and disclosures and that Defendants, having been made aware of these potential witnesses, should have deposed them.[12] Indeed, Plaintiff further contends that Defendant "cannot rely on the lack of evidence in the record to exclude the Witnesses when [Defendant] took no opportunity to depose the Witnesses or learn the substance of their testimony."[13]

Plaintiffs are mistaken in their analysis. It is not Defendant's burden to prove that the potential testimony of the witnesses is irrelevant. Rather, the party seeking

---

[7] *Id.*
[8] *Id.*
[9] *See* Fed. R. Evid. 401; *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 809 (5th Cir. 2017).
[10] Fed. R. Evid. 403.
[11] *See, e.g.*, *Hicks-Fields*, 860 F.3d at 809 ("[T]he bar [for relevance] is low . . . .").
[12] *See* R. Doc. 152 at pp. 1–3.
[13] *Id.* at 3.

to admit certain evidence—the Plaintiffs in this case—must provide evidence sufficient to support a finding to establish relevance.[14] Moreover, "[u]nder Rule 104(b), evidence is admissible only if there is evidence sufficient to support a finding that the alleged conduct actually occurred."[15] Plaintiffs have largely failed to make such a showing.

The only evidence proffered by Plaintiffs to establish the relevance of the testimony of these witnesses are general deposition statements made by Wade Bushman, CEO of Defendant, that Haddad, Richartz, and Mireles have previously complained that Defendant has not fully paid everything these three individuals believe is owed to them,[16] as well as Defendant's answer to an interrogatory.[17] It is unclear to the Court the nature and circumstances of the complaints of these individuals and to what extent they may (or may not) mirror the allegations made by Plaintiffs. The interrogatory answer provided by Defendant acknowledges that "Sef Haddad, Cameron Richartz, and Ruben Mireles have alleged that certain override payments that would have been paid after the termination of their relationship with YA but relating to invoices and work performed during the term of their agreements with [Defendant] are owed to them." Taking the statements alleged to have been made by Bushman during his deposition as true, namely, that these three individuals

---

[14] *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").
[15] *United States v. Gutierrez-Mendez*, 752 F.3d 418, 424 (5th Cir. 2014).
[16] R. Doc. 152 at p. 2. The Court notes that Plaintiff did not provide the Court with an attached copy of these alleged statements made during the deposition and thus the Court is unable to review these statements.
[17] *Id.*

have alleged that they are owed certain monies by Defendant, says little about the claims made by Plaintiffs *in this case*. For example, there is no indication that any of these individuals will provide any testimony that would be of relevance to Plaintiffs' claims for fraud or negligent misrepresentation.

Even assuming *arguendo* that the proposed witnesses each had claims similar to those of Plaintiffs in this case, their testimony would not make it more or less probable that Plaintiff Luke Bowman was specifically promised by Bushman, among other things, a unique-to-Bowman profit-sharing agreement.[18] "For the purposes of determining relevancy, 'a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand.'"[19] Here, there is no evidence that all of these individuals share a "common characteristic" that is of significance to the inquiry at hand. The other individuals all worked in separate regions of the country and had separate and independent arrangements with their respective regional partners.[20] There is no evidence before the Court to indicate that these individuals have any knowledge whatsoever of any alleged agreements that Plaintiffs made with Defendant.[21] Without more information about the nature of the claims and allegations of these three individuals, the Court is unable to find that their testimony in this matter bears any relevance to whether it is more or less probable that Defendant made certain promises to Plaintiffs.

---

[18] The Court notes that while Plaintiffs' breach of contract claim regarding the Leadership Pool has been dismissed, the alleged promises made by Defendant are still relevant to Plaintiffs' other claims.
[19] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1979) (en banc) (quoting Julius Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv. L. Rev. 954, 955 (1933)).
[20] R. Doc. 152 at p. 3; R. Doc. 150-1 at pp. 7–8.
[21] R. Doc. 150-1 at p. 7.

Although not directly on point, caselaw from this Circuit indicates that testimony and evidence regarding a defendant-employer's treatment of other employees is not relevant to a plaintiff-employee's claims against that same employer, insofar as the various employees allege different problems.  In *Kelly v. Boeing Petroleum Services, Inc.*, for example, the Fifth Circuit held that a plaintiff alleging discrimination on the basis of his handicap could not introduce evidence or elicit testimony regarding discrimination faced by other employees on the basis of race, sex, and national origin as such evidence would be irrelevant.[22]  The court explained that evidence that a defendant discriminated in some areas does not make it more or less probable that they were discriminatory in other ways.[23]

Similarly, just as evidence of discrimination against someone based on race is irrelevant to a claim of discrimination based on handicap, so too is the evidence here regarding alleged disputes between Defendant and the proposed witnesses irrelevant to the issue of whether Bowman was personally made certain promises by Defendant.  From the information the Court has before it, there is no indication that any allegations made by the five witnesses are in any way related to Plaintiffs' specific claims.  Just as the plaintiffs in *Kelly* could not invoke the generic label of discriminatory conduct to justify the relevance of the testimony of the other employees, here the Plaintiffs' cannot simply generically label the claims of the five individuals and of Plaintiffs as payment disputes to justify their relevance.

---

[22] *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357–58 (5th Cir. 1995) ("We therefore agree with the district court that [Defendant's] acts of unrelated discrimination are irrelevant . . . .").
[23] *Id.*

Further, Plaintiffs have provided no specific information whatsoever regarding the relevance of the testimony of Stockwell or Kesloff, neither of whom are referenced in either Bushman's deposition statement or the interrogatory answer.[24] Other than Plaintiffs' mere *ipse dixit* that the testimony of these two individuals is relevant, Plaintiffs have failed to produce evidence sufficient to support a finding that the proposed testimony of Stockwell or Kesloff is relevant.

Even if the Court were to find the testimony of these five individuals to be relevant, such testimony would likely be impermissible character evidence under Federal Rule of Evidence 404. Rule 404 generally excludes so-called propensity evidence—evidence that is used to "prove that on a particular occasion the person acted in accordance with the character or trait."[25] Relatedly, that Rule further states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[26] However, such evidence of prior acts may be admissible for another non-character purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[27]

In the instant case, there is a further danger that the potential testimony of the witnesses would be used to try to buttress Plaintiffs' case, namely, that because

---

[24] *See* R. Doc. 152 at p. 2.
[25] Fed. R. Evid. 404(a)(1); *Old Chief v. United States*, 519 U.S. 172, 181–82 (1997) ("Rule of Evidence 404(b) reflects this common-law tradition [of excluding propensity evidence] by addressing propensity reasoning directly . . . .").
[26] Fed. R. Evid. 404(b)(1).
[27] Fed. R. Evid. 404(b)(2).

Defendant has allegedly made and breached certain promises about compensation and profit-sharing in the past to these individuals, it is more likely that Defendant breached certain promises to Plaintiff, i.e., "that on a particular occasion the person acted in accordance with the character."[28] The Fifth Circuit has developed a two-part test—the so-called *Beechum* test—to determine whether certain evidence of prior acts is admissible for non-character purposes.[29] "First, it must be determined that the extrinsic evidence offense is relevant to an issue other than defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet other requirements of Rule 403."[30]

As for the first prong of the *Beechum* test, as discussed above, Plaintiff argues that rather than being impermissible character evidence, the witness testimony instead goes to the intent, motive, and absence of mistake of Defendant.[31] Each possibility will be considered in turn.

First, as to intent, the Court is unable to see how the proposed testimony establishes or relates to the alleged intent of the Defendant in this case. To qualify under the exception for either motive or intent evidence, "the conduct tendered must be sufficiently similar to the act under inquiry to minimize any doubt that the two are products of the same mind. The more idiosyncratic the less doubt, and,

---

[28] Fed. R. Evid. 404(b)(1).
[29] *See Beechum*, 582 F.2d at 911; *see also Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994).
[30] *Beechum*, 582 F.2d at 911.
[31] R. Doc. 152 at p. 3. The Court notes that the list of permissible purposes for use of prior acts evidence under Fed. R. Evid. 404(b)(2) is non-exhaustive. That being said, it is not for the Court to conjure up every possible purpose for which the evidence may be admissible. Thus, the Court will principally consider the grounds furnished by Plaintiff.

concomitantly, the greater the probative value."[32]  For one, as discussed earlier, there is scant evidence as to the nature or circumstances of the various allegations the proposed witnesses have as against Defendant.  The Court finds that at this juncture the conduct complained of by the proposed witnesses is not "sufficiently similar" to that alleged by Plaintiffs to suggest that they are all "products of the same mind."[33]  Moreover, whether or not Defendant breached certain promises to others employed by Defendant speaks little to establishing an intent on the part of Defendant to either make promises to Plaintiffs or to defraud Plaintiffs.

Likewise, regarding motive, it can hardly be said that the alleged disputes that other employees may have had with the Defendant provides a motive for Defendant to do what they are alleged to have done in the instant case.  That is, in no way does the alleged payment dispute between, for example, Richartz and Defendant provide a motive for Defendant to make and break further alleged promises to Plaintiffs.  There simply is no apparent causal connection between the various disputes.

Finally, regarding absence of mistake, Plaintiff argues that "[m]aking the same promises to the Witnesses, who similarly complained they were not paid, tends to show that [Defendant] did not mistakenly not pay [Plaintiffs] the compensation promised but that [Defendant] never intended to pay [Plaintiffs] the compensation promised."[34]  Yet, this argument begs the question—it assumes as true that Defendant promised compensation to Plaintiffs, the very thing that the parties

---

[32] *Lamar v. Steele*, 693 F.2d 559, 561 (5th Cir. 1982) (citing McCormick, *Evidence* § 157 (1954), then citing 2 Weinstein *Evidence* § 404[16], p. 404–92).
[33] *Id.*
[34] R. Doc. 152 at p. 3.

dispute. Defendant is not arguing that it mistakenly forgot to pay Plaintiffs for certain override payments that it otherwise promised Plaintiffs. Instead, Defendant argues that there was no mistake at all because Defendant never promised Plaintiffs anything regarding a higher percentage cut of the profits. There being no claimed mistake at issue, Plaintiffs cannot now claim that the proposed witness testimony tends to show an absence of mistake; there is simply nothing to rebut.

As to the second step of the *Beechum* test, the Court looks to Federal Rule of Evidence 403 to determine whether evidence that may be admissible under the first step per Federal Rule of Evidence 404(b) ought to be otherwise excluded.[35] While all relevant evidence is presumptively admissible,[36] the Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[37]

Here, even if the Court found the testimony of the proposed witnesses both relevant and offered for a permissible non-character purpose, the Court would still likely exclude the testimony under Rule 403 because the probative value of the testimony is "substantially outweighed" by the danger of unfair prejudice to Defendant and the likelihood of confusing the jury with a separate "mini-trial or trials."[38] From the little evidence regarding the testimony of the proposed witnesses

---

[35] *Beechum*, 582 F.2d at 911.
[36] Fed. R. Evid. 402.
[37] Fed. R. Evid. 403.
[38] *See, e.g.*, *Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, No. CV 14-912, 2016 WL 4039167, at *2 (E.D. La. July 27, 2016) (expressing concern that introducing certain evidence would result in "a wasteful and tangential mini-trial").

that the Court has, the Court finds that the probative value of such testimony is minimal at best, for the reasons discussed above.

Further, the Court finds that there is a real danger of prejudice to the Defendant if these five individuals are allowed to testify as to the various disputes and grievances that they have with Defendant. Indeed, it seems to the Court that the main purpose of having these witnesses testify is merely to present evidence of dubious relevance to Plaintiffs' claims that reflects poorly on the Defendant's character—the exact reason why the Federal Rules of Evidence prohibit character evidence.[39] Even with a limiting instruction, the Court finds that it is likely that the jury will view the proposed testimony as evidence suggesting Defendant's propensity for making and breaking promises.

Moreover, the Court is concerned that having these individuals testify about their assorted histories and grievances with Defendant will needlessly distract and confuse the jury as the jury may believe that it must also determine whether Defendant made certain promises to these individuals. This very likely may lead to a "trial within a trial" that Federal Rule of Evidence 403 seeks to prevent.[40] Given these dangers, and given that they substantially outweigh whatever probative value, if any, the proposed testimony may have, the Court finds that the second step of the *Beechum* test is not satisfied and, accordingly, that the witnesses must be excluded at this time from testifying.

---

[39] *See Old Chief*, 519 U.S. at 650–51 (explaining the rationale behind Fed. R. Evid. 404(b)).
[40] *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 280 (S.D.N.Y. 2015) (citing *United States v. Aboumoussallem*, 726 F.2d 906, 912–13 (2d Cir. 1984)).

## II. Defendant's Answer to Interrogatory No. 1

Defendant next argues that Plaintiffs should be excluded from using, for any purpose, one of Defendant's answers to a discovery interrogatory that Defendant later revised.[41] Specifically, Defendant moves to exclude its first answer to Interrogatory No. 1 regarding the sharing of overrides.[42] Originally, Defendant's February 18, 2022 answer to Interrogatory No. 1 stated that beginning at some point in 2017, Bowman began receiving a discretionary share of Defendant's revenue "from the revenue share that would otherwise be distributed to Wade Bushman and Ray Young from the Southeast Region."[43] However, on May 27, 2022, Defendant revised its answer to this interrogatory by deleting Ray Young's name while keeping the rest of its answer intact.[44] As Defendant points out, Fed. R. Civ. Pro. 26(e) requires parties to update or amend prior discovery responses if and when they later discover that those responses are incorrect or untruthful.[45] Defendant now argues that they should not be penalized for complying with Rule 26(e) by having the prior interrogatory answer introduced at trial.

Notably, Defendant cites no relevant caselaw from either this Circuit or any other court for the proposition that a party's prior statement in discovery becomes inadmissible at trial so long as that party has revised or updated that statement

---

[41] R. Doc. 150-1 at p. 8.
[42] *Id.* at pp. 8–9.
[43] *Id.*
[44] *Id.*
[45] *See* Fed. R. Civ. Pro 26(e) ("A party . . . who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .") (cleaned up).

pursuant to its Rule 26(e) duties.  The one case cited by Defendant is inapposite and does little to advance Defendant's argument.  As Plaintiff points out, that case, *Bryant v. North Bank Towing Corp.*, dealt with the exclusion of an interrogatory answer on the grounds that the answer was wholly irrelevant to the case at hand and that any inquiry about the answer would be unduly prejudicial, confusing and a waste of time.[46]  Moreover, *Bryant* has nothing to do with interrogatories amended pursuant to Fed. R. Civ. Pro. 26(e) nor does it stand for a general proposition regarding the inadmissibility of interrogatory answers.

Defendant's novel argument that a party's own statement in a verified document becomes inadmissible if that same party, even in good faith, later determines that its statement was incorrect or misleading and revises it accordingly finds little support either in caselaw, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence.  Indeed, Fed. R. Civ. Pro. 33 governing interrogatories explicitly states that answers to interrogatories "may be used to the extent allowed by the Federal Rules of Evidence."[47]  That is, Defendant must make an argument regarding the admissibility of its answer to Interrogatory No. 1 just as it would regarding any other piece of evidence—by reference to the Federal Rules of Evidence. The upshot of Defendant's argument would be to contradict the clear text of Fed. R. Civ. Pro. 33(c) by placing additional, atextual barriers to the admissibility of interrogatories.

---

[46] *Bryant v. N. Bank Towing Corp.*, No. CV 05-3077, 2006 WL 8456221, at *3 (E.D. La. Nov. 9, 2006).
[47] Fed. R. Civ. Pro. 33(c).

The Court finds that the initial answer to Interrogatory No. 1 in the instant case is admissible as a non-hearsay statement of a party opponent under Fed. R. Evid. 801(d)(2)(3). Further, nothing in the Federal Rules of Evidence would necessarily prohibit Plaintiffs from using Defendant's interrogatory answer for impeachment purposes. Defendant is free to argue at trial that the manner in which Plaintiffs use the interrogatory answer is not proper under the relevant evidentiary rules. However, what the Court will not do at this point is conclusively keep out the interrogatory answer in its entirety.

Federal Rule of Civil Procedure 26(e) is designed to encourage parties to be candid with one another and to ensure that the parties share and continue to share truthful information with one another, with a continuing duty to update as more facts and information come in. It is not, however, designed to shield a party from the consequences of their own errors or mistakes. While in certain limited circumstances a party can "take back" information accidentally shared with the opposing party and not have it used against them at trial, [48] the facts of this case do not support such a finding. Defendant did not mistakenly share, for example, privileged information with Plaintiff. Rather, Defendant openly and voluntarily provided an answer that it

---

[48] *See, e.g.*, Fed. R. Civ. Pro. 26(b)(5)(B) ("After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.").

later discovered and believed to be incorrect.[49]  As such, the Court holds that Defendant's motion to exclude the interrogatory answer should be denied.

### III. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion *In Limine*[50] is **GRANTED** in part and **DENIED** in part**.**

New Orleans, Louisiana, September 1, 2022.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[49] Notably, Plaintiffs dispute this "innocent error" and instead suggest that Defendant later revised their initial response only after realizing that their response was damaging to their side. *See* R. Doc. 152 at p. 6. While the Court has no reason to doubt that Defendant acted in good faith, such dispute only further highlights the problems inherent in Defendant's argument. If a party were to know that incorrect responses made in interrogatories could later be revised and that the initial answer would be inadmissible, the possibility for bad faith manipulation of answers would be myriad.
[50] R. Doc. 150.